IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 2:09-CR-00895-RJS-BCW |
| | **FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING RESTITUITON** |
| **MICHAEL LOREN DUNN,** | |
| Defendant. | |

Having reviewed the submissions of Vicky, the United States, and the Defendant, and having carefully considered the arguments of counsel, the court makes the following findings of fact and conclusions of law:

1. Defendant Michael Loren Dunn was convicted at a jury trial of violations of Title 18, United States Code, Section 2252A(a)(5)(B), possession of child pornography; Title 18, United States Code, Sections 2252A(a)(2) and(b), receipt and attempted receipt of child pornography; and Title 18, United States Code, Sections 2252A(a)(2) and (b), distribution and attempted distribution of child pornography. Among the child pornography images that Dunn received and distributed were images of a victim who proceeds by way of the pseudonym "Vicky."

2. On January 24, 2013, through her legal counsel, Vicky filed a detailed request for restitution under 18 U.S.C. § 2259, a statute that makes an award of restitution for the "full amount" of the victim's losses mandatory. Initially, Vicky sought full restitution in the amount of $1,330,015.75, comprised of $106,900.00 in future counseling expenses, $147,830.00 in educational and vocational counseling needs, $722,511.00 in lost earnings, $54,959.75 in expenses paid in out-of-pocket costs for the forensic evaluations, supporting records, court costs, and travel to meet with the client, and $297,815.00 in attorneys' fees. Because Vicky received by that date $600,841.09 in restitution payments from other offenders, she sought restitution for the net amount of economic losses of $729,174.66. In a pleading filed September 6, 2013, Vicky advised the court that she had received additional restitution, leaving the net amount of economic losses of $583,955.30 – the amount that she has sought here in restitution, supported by the United States.

3. At sentencing, the Court permitted Vicky's victim impact statement to be read orally in court. That statement provided, in relevant part:

> I am 21 years old and I am living every day with the horrible knowledge that someone somewhere is watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child pornography. Unlike other forms of exploitation, this one is never ending. Everyday people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain.
>
> I had no idea the "Vicky" series, the child porn series taken of me, had been circulated at all until I was 17. My world came crashing down that day, and now, two years later, not much has changed. These past years have only shown me the enormity of the circulation of these images and added to my grief and pain. This knowledge has given me a paranoia. I wonder if the people I know have seen these images. I wonder if the men I pass in the grocery store have seen them. Because the most intimate parts of me are being viewed by thousands of strangers and traded around, I feel out of control. They are trading my trauma around like treats at a party, but it is far from innocent. It feels like I am being raped by each and every one of them. What are they doing when they watch those videos

> anyway? They are gaining sexual gratification from images of me at ages 10 and 11. It sickens me to the core and terrifies me. Just thinking about it now, I feel myself stiffen and I want to cry. So many nights I have cried myself to sleep thinking of a stranger somewhere staring at their computer with images of a naked me on the screen. I have nightmares about it.
>
> My paranoia is not without just cause. Some of these perverts have tried to contact me. One tried to find me through my friends on MySpace. Another created a slide show of me on Youtube. I wish I could one day feel completely safe, but as long as these images are out there, I never will. Every time they are downloaded I am exploited again, my privacy is breeched, and my life feels less and less safe.

The court finds that Vicky has credibly explained the harms that she has suffered from child pornography.

  4. At sentencing, the court also had before it detailed exhibits supporting Vicky's restitution request. The defendant presented no contrary evidence to either Vicky's impact statement or the exhibits supporting her restitution request, but motioned the court to compel Vicky to produce a more up-to-date economic report regarding her damages and regarding the damages that Mr. Dunn caused as a result of his underlying criminal behavior. The court declined to order such a report. The court further finds that the exhibits supporting Vicky's restitution request are credible and accurately establish the extent of her losses from child pornography.

  5. For purposes of restitution, Vicky is a "victim" of Dunn's offenses of conviction, including his conviction for distribution of child pornography. Section 2259 defines a "victim" as an "individual harmed as a result of a commission of a [child pornography] crime . . . ." 18 U.S.C. § 2259(c). Vicky was harmed when Dunn distributed images of her being raped and sexually abused as a child. Numerous courts have reached this conclusion. *See, e.g.*, *United States v. Kearney*, 672 F.3d 81, 94 (1st Cir. 2012) ("Any argument that Vicky has not suffered harm as a result of Kearney's crimes defies both fact and law."); *United States v. McDaniel*, 631

F.3d 1204, 1208 (11th Cir. 2011) ("McDaniel 'harmed' Vicky under the meaning of section 2259(c) by possessing images of her sexual abuse as a minor."). The Tenth Circuit has reached this conclusion in affirming, at least in part, a restitution award for Vicky. *See United States v. Benoit*, 713 F.3d 1, 22 (10th Cir. 2013) (stating "we have no issue" with award of restitution for attorney's fees for Vicky).

      6. Vicky and the United States have provided sufficient information in this case from which the court concludes that all her losses were proximately caused by Dunn. Vicky is specifically aware of this particular case and this particular defendant, in light of the statements made by her counsel at sentencing. Moreover, in this case, there is a sufficient nexus between Dunn's crimes and all of the losses suffered by Vicky to award restitution for those losses. Between early 2007 through March 26, 2009, Dunn offered child pornography files over the internet through peer-to-peer software, including LimeWire. Vicky's images were among those Dunn offered. By freely sharing Vicky's images using LimeWire, Dunn made those images available for download by any of the hundreds of thousands of worldwide LimeWire users, who in turn could readily share those images with other interested parties.

      7. Vicky's psychological reports establish that following these crimes, she suffered grave psychological harm. For example, a psychological report prepared by a qualified psychologist, dated May 22, 2009, states: Vicky "has suffered significant, permanent psychological damage as a direct result of the knowledge that images of her victimization, humiliation and exploitation have been downloaded and viewed by numerous individuals." Report of Dr. Randall L. Green at 2, Exhibit 3 to Vicky's Restitution Request (May 22, 2009). The report and other evidence provided by Vicky establishes that she will have the need for extensive future psychological counseling expenses, educational and vocational counseling needs, as well as lost earnings. As

explained in great detail in the sealed evidentiary package as well as the restitution pleading submitted by Vicky's counsel, Vicky has suffered and continues to suffer losses as a result of the widespread distribution of the images and videos depicting her sexual abuse. Of particular note is that Vicky's "condition deteriorated markedly over 2009 and early 2010 with the realization of the widespread proliferation of the images of her childhood sexual abuse .... Vicky dropped out of school in the spring of 2009 to return home and resume counseling. She found herself unable to work at a simple job in an ice cream shop because of her involuntary reactions dealing with the men who came in to buy ice cream. Despite needing a job to support herself, Vicky was forced to quit because of frequent panic attacks. She returned home to the support of her family and renewed therapy." This deterioration occurred shortly after Dunn directly contributed to Vicky's losses via his indiscriminate distribution via LimeWire of images and videos depicting her sexual abuse.

8. Persuasive quantification of Vicky's losses is credibly established through Dr. Green's report, as well as through a Vocational Assessment prepared by Merrill A. Cohen and an economic projection prepared by Dr. Stan V. Smith. No counter evidence or credible challenge to these reports was presented by Dunn. Vicky has quantified her losses appropriately through these reports.

9. The Tenth Circuit has established the legal standards governing restitution requests for child pornography crimes of this type in *United States v. Benoit*, 713 F.3d 1 (10th Cir. 2013). *Benoit* establishes that a general "proximate cause" requirement exists for all restitution requested under 18 U.S.C. § 2259, although courts have reached varying conclusions on this issue – varying conclusions that have lead the Supreme Court to grant certiorari to interpret the statute. In awarding restitution to Vicky, this court has followed the requirements of *Benoit*, including in particular a requirement that losses for which restitution is to be awarded must have been proximately caused by Dunn's crime.

10. *Benoit* involved a defendant convicted only of possessing and receiving child pornography. Dunn has been convicted of the more serious crime of distributing child pornography. At several points, *Benoit* cites favorable the Seventh Circuit's opinion in *United States v. Larenata*, 700 F.3d 983 (7th Cir. 2012). *See Benoit*, 713 F.3d at 19; *id.* at 20; *id.* at 22. *Laraneta*, in turn, discussed what losses are proximately caused by a defendant convicted of distributing child pornography. *Laraneta* explains (in a case involving this same victim, Vicky) that when a defendant is convicted of distribution:

> [t]he apportionment problem would then be acute, maybe insoluble. *When two or more tortfeasors, though not acting in concert, inflict a single loss as a result of their separate acts, they can be sued as joint tortfeasors and each made liable for the full amount of the plaintiff's loss*—that's the two-fires case we mentioned earlier. (There really are such cases—e.g., *Anderson v. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co.*, 146 Minn. 430, 179 N.W. 45, 49 (1920).) The approach may be applicable to distributors of pornography (and if so, though it is a tort doctrine it could be adopted for criminal restitution) because it may be impossible as a practical matter to apportion liability among distributors. The number of pornographic images of a child that are propagated across the Internet may be independent of the number of distributors. A recipient of the image may upload it to the Internet; dozens or hundreds of consumers of child pornography on the Internet may download the uploaded image and many of them may then upload it to their favorite child-pornography web sites; and the chain of downloading and uploading and thus distributing might continue indefinitely. That would be like the joint-fire case.

6

*Laraneta*, 700 F.3d at 991-92 (emphasis added). The court holds that *Laraneta* properly explains how to apply the restitution requirements of 18 U.S.C. § 2259 following a distribution conviction and that, while *Benoit* involved a receipt/possession conviction, its reasoning is fully consistent with *Laraneta*.

11. Dunn has not filed any pleading contesting that *Laraneta* is fully consistent with *Benoit*. Nor does Dunn argue that *Laraneta* was wrongly decided or otherwise unpersuasive. Instead, in his restitution brief, Dunn points to a sentence in the *Laraneta* decision that states that the case had to be remanded for a determination of the "'portion of [Vicky's] damages allocable to [the] defendant.'" Defendant's Resp. at 7 (*quoting Laraneta*, 700 F.3d at 992). But Dunn is quoting this sentence out of context to argue that the Seventh Circuit was concluding that Vicky's losses had to be divided up among various defendants. The passage quoted above is *Laraneta*'s analysis of restitution in the distribution setting.

12. The court can only consider whether to award restitution in this case in light of the evidence submitted and arguments asserted by Vicky and the United States and the responses provided by Dunn. In his briefing to the court, Dunn argues, for example, that Vicky has failed to properly file her materials in the court file. But Vicky provided her materials to the United States Attorney's Office, which has in turn provided those materials to the probation office. This is consistent with the requirements of the restitution statute. *See* 18 U.S.C. § 3664(d)(2)(A)(iii).

13. Dunn also argues that *Hughey v. United States*, 495 U.S. 411, 418-20 (1990), limits the size of the restitution award he must pay. But *Hughey* was a case in which the Supreme Court interpreted the provisions of the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. § 3579. That decision has no bearing on the provisions at issue in this case, the Mandatory Restitution for Victims of Child Pornography Statute, 18 U.S.C. § 2259, a statute

7

enacted more than a decade later with broader provisions. *See* Pub. L. 103-322, Title IV, § 40113(b)(1), Sept. 13, 1994, 108 Stat. 1907. Moreover, here (unlike in *Hughey*) there is no dispute that Dunn was convicted of a crime directly victimizing Vicky – i.e., distributing Vicky's images.

14. Dunn also appears to argue that Vicky's losses are divisible. The *Restatement of Torts* notes that "[w]hether damages are divisible is a question of fact. A party alleging that damages are divisible has the burden to prove that they are divisible." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 26, comment *h*. Dunn offered this court a method of dividing up the damages pursuant to *Benoit* by asking the court to order an up-to-date economic report to be prepared that allocated the harm by Dunn regarding Vicky. The court denied Dunn's request, and held that it would not be a reasonable means of dividing Vicky's damages. On this issue, Vicky and the United States have more persuasively explained the size of Vicky's losses proximately caused by Dunn than has Dunn.

15. Dunn has also committed a crime of intent. The ordinary tort approach in such a setting is to make each defendant responsible for the full amount of a victim's losses. *Restatement (Third) of Tort* § 12, *cited Smith ex rel. Smith v. The Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217 (S.D.N.Y. 2003) (holding terrorist organization jointly and severally liable for losses of victims). This provides a separate and independent reason for assigning all of Vicky's losses to Dunn's crime.

16. The only specific challenge that Dunn makes to the calculation of the restitution amounts that Vicky seeks is his challenge to the ability of this court to award restitution for future lost income. But in a case that Dunn does not cite or discuss, this court has previously awarded substantial restitution for future lost income under a comparably-worded statute. *See*

8

*United States v. Serawop*, 409 F.Supp.2d 1356 (D. Utah 2006) (awarding $325,751 in future lost income to estate of three month old baby who was killed).  The Tenth Circuit has affirmed this ruling.  *See United States v. Serawop*, 505 F.3d 1112 (10th Cir. 2007).  For the reasons given in those decisions, the court finds it has the ability to award restitution for future lost income.

17. In light of these findings of fact and conclusions of law, and having carefully considered the briefing and arguments in this case, the court concludes that Vicky is entitled to restitution from Dunn in the amount of $583,955.30.  This restitution is awarded jointly and severally with respect to other defendants who have also been ordered, or who are hereafter ordered, to pay restitution to Vicky for the same losses.  Accordingly, when and if Vicky recovers the full amount of her losses from other defendants, Dunn will have no further obligation to pay restitution to Vicky.  Dunn will make payment towards this obligation on the schedule directed by the court at the sentencing hearing.  In particular, based on the financial information contained in the pre-sentence report, Dunn is directed to pay $15 per month while incarcerated and $200 per month upon his release from prison.

SO ORDERED this 9th day of October, 2013.

BY THE COURT

_____
ROBERT J. SHELBY
United States District Judge